### ELIZA DOLL ET AL. V. W. H. MUNDINE.

#### No. 758.

1. **Harmless Error—Necessary Parties.**—Suit for an interest in a tract of land ; prayer for partition. After answer to the merits by defendants it was suggested that others were interested in the land, with request that they be made parties. On the trial it appeared that the plaintiffs and the defendants owned the entire tract. *Held*, the refusal by the court to continue the case to make other parties was harmless, even if error; besides, the motion came too late under the circumstances.

2. **Discharging Jurors—Right to Jury.**—The court discharged ten jurors at their request, leaving thirteen in the panel. Defendants excepted to the discharge and then waived a jury, preferring trial by the court to a jury selected from the remaining jurors and talesmen. The case had been on the nonjury docket for several years. After the first day of the term at which the trial was had demand was made for a jury, but it does not appear that the jury fee was paid, or affidavit of inability to pay filed, nor had the case been placed upon the jury docket. *Held*, that it did not appear that the defendants were in a position to demand a jury, and they could not complain that the action of the court in excusing the jurors had deprived them of any legal right.

3. **Application for Continuance.**—An application for continuance was overruled. Appeal was taken, and the judgment was reversed for error in overruling the motion. After the reversal a motion for continuance was properly held to be a second application, and treated as such.

4. **Continuance—Second Application.**—See second application for continuance held insufficient.

5. **Application—Reference to Documents.**—The application for continuance was to obtain witnesses to prove a letter from the father of plaintiff, and acting for him, to one of the defendants, in which "plaintiff virtually admits and acknowledges the cotenancy," etc. *Held*, the better practice required that the letter should be produced; and that the affidavit did not show the letter to be material.

6. **Admissions.**—Declarations admitting cotenancy made by father of a minor holding in severalty are incompetent; and especially so when it was not shown that the father was in possession of the land to which the admissions related.

7. **Tender of Witness Fees.**—Railway v. Hall, 83 Texas, 678, 679, adhered to as to necessity for tender of witness fees in exercise of due diligence to procure the attendance of a witness, to be shown in second application for continuance.

8. **Title by Limitation.**—Plaintiff proved deed to undivided interest, from common source, parol partition allotting to him his interest, that he went into possession in 1872, fenced it, cultivated a part of it, and has continuously occupied it. *Held*, that he showed full title to the land in suit filed October, 1889, the defendants exhibiting a deed from common source for balance of the tract as undivided, executed subsequent to the entry of plaintiff into possession under the partition.

APPEAL from Lee. Tried below before Hon. BEAUREGARD BRYAN.

*James B. & Charles J. Stubbs* and *Edwin S. Easley*, for appellants.

1. In a suit wherein there is prayer for the partition of real estate, every person owning an interest in the land so sought to be partitioned is not only a proper party but a necessary party to the suit, and in an action wherein the plaintiff claims under a deed to an undivided interest in a certain tract, and seeks to establish a subsequent parol partition alleged to have been entered into with his grantor twenty years prior to the filing of such suit, and ten years before the latter's death, and where it further appears that other persons have, since the date of the alleged oral partition, acquired from said grantor, by deed or inheritance, undivided interests in said tract, all such persons are not only proper but necessary parties.

2. Where a purchaser or other grantee holds under a deed, conveying undivided a certain quantity of land out of a large tract, neither he nor himself together with all others interested in the same tract, if they hold under similar deeds from the same grantee, can claim under such title a surplus which may remain after all such grantees have had their designated number of acres set apart to them.

3. Before a case is called for trial, persons other than plaintiffs or defendants, if proper parties, may be brought into court by process upon the application of either plaintiff or defendant, unless it be made to appear that such process will unreasonably delay the trial of the case. But whenever it appears, either during the course of the trial or before, that such other persons are necessary parties, no other proceedings should be allowed in the case until such parties are cited. Rev. Stats., arts. 1202, 1209; Franks v. Hancock, 1 Texas U. C., 555;

Ship Channel Co. v. Bruly, 45 Texas, 6; Oliver v. Robertson, 41 Texas, 422; O'Connel v. Duke, 29 Texas, 300.

*Rector & Harris* and *Ed. R. Sinks*, for appellee.—1. The court did not err in refusing appellants' application to make other parties. Because: 1. The suggestion came too late after having two or three years prior thereto answered to the merits, the parties not being necessary parties. 2. The names of the alleged heirs of J. C. Mundine were not given to the court, although their own aunts were suggesting them as necessary parties, and although it appeared that most of them lived in Lee County; nor was the name of the administrator of the estate of J. C. Mundine, deceased, given. 3. The pleading was not verified by affidavit. The loose affidavits found among the papers filed on the 14th day of May, two days after the pleading was filed, without calling the attention of the court to the filing or obtaining permission to so amend their said pleading, could not be considered in verification of said pleading. Howard v. McKenzie, 54 Texas, 184; Allen v. Read, 66 Texas, 13; Russell v. Railway, 68 Texas, 650; Graham v. McCarty, 69 Texas, 323; Sayles' Pl., sec. 94.

2. The court did not err in overruling appellants' motion for a continuance. Because: 1. It was insufficient as a second application. 2. If it be considered as a first application, it assumed to show the facts expected to be proved by the absent witnesses, and disclosed the immateriality of their testimony, and it must be judged from the facts sought to be proved as shown by the application. Williams v. Talbot, 27 Texas, 159; Flournoy v. Marx, 33 Texas, 786; Douglas, Brown & Co. v. Neill, 37 Texas, 548.

COLLARD, Associate Justice.—This suit was brought on October 12, 1889, by appellee, W. W. Mundine, against appellants, Eliza Doll and her husband, G. W. Doll, Mary C. Cunningham and her husband, D. Cunningham, in the District Court of Lee County, alleging the following facts:

That on the 9th day of November, 1871, appellee's grandfather, J. C. Mundine, executed to him a deed to 250 acres undivided interest in a survey of 1452 acres of land, more or less, part of the Thomas Morrow league, describing the 1452 acres by metes and bounds. That afterwards, in May, 1872, F. M. Mundine, the father of plaintiff, acting for him, then a minor, and J. C. Mundine made a parol partition of the 1452 acres, setting apart the certain 250 acres of the same to plaintiff, now claimed by him, described by metes and bounds, out of the 1452 acres tract, which partition plaintiff, having long since become of age, has ratified. That plaintiff, since the partition, has had and held peaceable, continuous, exclusive, and adverse possession of the 250 acres, claiming to have good and perfect title thereto.

That defendants Eliza Doll and Mary C. Cunningham own 1202 acres undivided interest in the 1452 acres survey, by deed from their father, J. C. Mundine. That the survey contains more than 1452 acres, and that he (plaintiff) is the owner of all of the same except the 1202 acres deeded to defendants. That defendants deny the alleged parol partition, which denial casts a cloud upon plaintiff's title to the particular 250 acres of land described in the petition.

Defendants are notified that plaintiff will introduce certified copies of the deed to him by his grandfather—the same having become mutilated—and of a deed to him by Maria E. Mundine, administratrix of the estate of J. C. Mundine, deceased, of date July 24, 1888, to the estate's right to the west half of the Morrow league, estimated at 284 acres. They are also notified to produce on the trial the deed to them by J. C. Mundine.

Prayer for decree establishing the parol partition, removing cloud from plaintiff's title to the 250 acres of land and quieting him in his title thereto, and that commissioners be appointed to partition the remainder of the 1452 acres between him and defendants, allowing to defendants their 1202 acres, and the remainder to be allotted to plaintiff.

Defendants on May 12, 1892, filed demurrer, general denial, and plea of nonjoinder of parties defendant, in the order stated. The plea of nonjoinder of parties states, that administration upon the estate of J. C. Mundine, deceased, is pending in Galveston County, and that the administrator ought to be made a party defendant; that J. C. Mundine left lawful heirs other than the parties to this suit, to wit, the children of Titus Mundine and P. A. Mundine, both deceased, who were children of J. C. Mundine, who died intestate; that the children of P. A. and Titus Mundine are entitled to a portion undivided of the land in suit, and that the names of such children are unknown to defendants, but that they reside in Lee County, Texas. Prayer that the administrator of the estate of J. C. Mundine and the unknown heirs of Titus and P. A. Mundine be made parties to the suit. The plea was sworn to by E. S. Easley, attorney for defendants, supported by affidavit of George W. Doll.

Plaintiff excepted to the plea, upon the ground that it was not filed in due order of pleading.

Upon the trial it was admitted by the parties that plaintiff and defendants both claim from J. C. Mundine, the common source of title; that J. C. Mundine, on the 9th day of November, 1871, by deed, conveyed to plaintiff 250 acres undivided interest out of the 1452 acres tract, and that, by deed of date April 16, 1874, he conveyed to defendants Eliza Doll and Caroline Cunningham 1202 acres undivided interest out of the same tract; and plaintiff's deed was duly recorded in deed records of Lee County on the 3rd day of October, 1881.

It was proved by F. M. Mundine, the father of plaintiff, that J. C. Mundine was his (witness') father, and that defendants Eliza and Caroline were his sisters; that J. C. Mundine died in 1879. That at the time J. C. Mundine executed the deed to plaintiff, it was understood what particular land was conveyed. That afterwards, on May 1, 1872, witness, who was then acting for plaintiff (who was then a minor), and J. C. Mundine, in the presence of W. R. Doak, S. Atchison, and R. Puckett, as witnesses, again had a full understanding and parol agreement, by which their former understanding and parol agreement were confirmed, by which they partitioned off the 250 acres of land sued for by plaintiff; that the same was surveyed by Surveyor Doak. That, upon the making of the deed, plaintiff went into possession of the land so set apart to him, fenced it, from time to time put in cultivation as much as 150 acres thereof, and has been in continuous, exclusive, adverse, and peaceable possession for over twenty years, claiming the same as his own and paying all the taxes thereon. That J. C. Mundine, as long as he lived, recognized the parol partition and knew of plaintiff's continuous and exclusive claim. That defendants have always recognized plaintiff's title to the 250 acres, knew of it, and never denied it until a short time before suit, when they were appealed to to execute written partition deeds, but refused to do so. That plaintiff had long been of age, and had ratified and confirmed the partition witness as his agent made for him with J. C. Mundine; and that at the time of the partition the 250 acres sued for was not relatively of more value than the remaining 1202 acres owned by defendant.

Defendants, on May 17th, demurred to the evidence of plaintiff, upon the ground that it showed that, after the parol partition setting apart the 250 acres to plaintiff, they acquired by deed from the original owner 1202 acres undivided of the 1452 acres tract; and that the evidence fails to show that they had notice of the oral partition at the time of the deed to them.

On the same day, a jury having been waived by the parties, the court rendered judgment for plaintiff, establishing the parol partition, vesting title in plaintiff to the 250 acres of land, removing cloud from and quieting his title to the same. The judgment also, ascertaining that there was no excess in the 1452 acres tract of land after taking out the 250 acres and the 1202 acres, declared that no partition was necessary, and that no commissioners to partition should be appointed. Defendants appealed.

They contend that the court erred in not continuing the cause to make parties as requested in their plea.

Upon this subject we find in the record a bill of exceptions showing that, before announcement for trial, defendants suggested to the court that in their answer it was shown that there were heirs of J. C. Mundine, other than those made parties, who were interested in the subject

matter of the suit; whereupon plaintiff, by counsel, stated that he would disclaim as to any overplus in the 1452 acres tract of land; in reply to which, defendants' counsel suggested that their answer showed such interested heirs independently of plaintiff's pleadings, and then demanded that such heirs be made parties, and that the cause be continued for that purpose; whereupon the court ruled that, as the plaintiff had disclaimed as to the overplus in the 1452 acres, it did not appear that such heirs were proper parties, and that the cause should not be continued to make parties. The court qualified the bill, stating that plaintiff did not disclaim, but announced that he would not claim the overplus in this action.

*Opinion.*—We think that if there was error in the ruling, it was harmless and technical only, inasmuch as there was in fact no excess in the survey, as declared in the judgment of the court, to which in this respect there is no assignment of error. The evidence does not show any excess. There being no excess, the parties before the court owned all the land, and other heirs of J. C. Mundine had no interest in it and were not necessary parties. Under the circumstances, it should be held that the objection to proceeding to trial for want of parties came too late.

The affidavits to the plea were not filed until the 10th and 14th of May, 1892, though the suit was filed October 12, 1889. The case had been once tried, judgment rendered for plaintiff, appealed to the Supreme Court, and reversed. Doll v. Mundine, 84 Texas, 315. After plaintiff withdrew the issue of his claim to the excess, the only issue was his claim to the specific 250 acres described in his petition by virtue of the alleged parol partition, thus eliminating any question of partition to be obtained in this suit as to the excess.

The facts do not present a case where other parties *must* be made before the court could proceed to judgment on the issues made between the parties before it, but where possibly others might have been proper parties. Howard v. McKenzie, 54 Texas, 171; Russell v. Railway, 68 Texas, 650; 2 Chitty Pl., 269, and note; Sayles' Pl., sec. 94.

Appellants contend that the court erred in discharging for the term "seven" of the regular jurors before the trial, whereby the appellants were deprived of the right of trial by a jury regularly selected by the jury commissioners.

The bill of exceptions to the action of the court shows that the court discharged "ten" of the regular jurors at their request, defendants excepting. The court, qualifying the bill, states that the ten jurors excused had been sitting on a criminal case for six days, and several were sick. Before discharging the jurors the court informed defendants that there were still thirteen jurymen in the box, and asked defendants if they could state any objection or injury to them

by excusing the ten. Defendants replied that they preferred not to state any objection or injury, but simply reserved their exceptions to the action of the court. The case had been set down as a nonjury case, and during the week in which the criminal docket was taken up, a jury was demanded. The ten jurymen were held over from the week before.

The record shows that defendants waived a jury, saying they did so in preference to selecting from the list remaining on duty, or being compelled to accept talesmen.

A demand for a jury was made, it seems, but it does not appear that it was granted, nor that the jury fee had been deposited, or affidavit made of inability to make the deposit, or that the case was ever placed upon the jury docket. The demand was not made on the first day of the term.

The record does not show that defendants were in a position to demand a jury trial, and therefore they can not complain that the court's excusing some of the regular jury deprived them of the right to have the case tried by the jury selected by the jury commissioners. Rev. Stats., arts. 3060, 3061; McFaddin v. Preston, 54 Texas, 403; Hardin v. Blackshear, 60 Texas, 132; Gallagher v. Goldfrank, 63 Texas, 473; Berry v. Railway, 60 Texas, 654.

Besides this, we are not prepared to say that the court abused its discretion in excusing jurors upon their request, even if defendants had shown that they demanded a jury in time and deposited the jury fee. They were not in fact deprived of a trial by jury, and do not show that any injury resulted to them from the action of the court. We do not think the judgment should be reversed for the cause alleged.

The court below overruled defendants' application for a continuance, to which they excepted, and now insist that the court erred.

The court allowed the bill of exceptions, qualified substantially as follows:

1. That defendant in 1889 made application for a continuance because of the absence of the same witnesses now absent, except two, which was overruled; defendants appealed, and the Supreme Court, in the case of Doll v. Mundine, reversed the judgment on the ground that the application should have been granted, it being the first application, and that, therefore, the court regarded the present as the second application, and refused it because no proper diligence is shown, as no fees are shown to have been tendered the witnesses.

2. Because the case was set by agreement for trial on May 14th, Saturday, when, it being called, plaintiff announced ready and defendants announced not ready, on account of the absence of witnesses; whereupon the court set the case for trial on May 16th, to which defendants objected; but, another case being on trial all of that day, this

case was called on Tuesday, May 17, 1892, and plaintiff announced ready and defendants announced not ready, and presented the application to continue.

We agree with the court below that this was the second application to continue. It reads as follows:

"Now come the defendants in above entitled and numbered cause, and by attorney, E. S. Easley, say they can not go safely to trial at this term of said court, on account of the want of testimony of the following named witnesses: I. Douglass, Dr. J. A. Bain, Thomas Douglass, George Guthrie, J. W. Hardcastle, and J. A. Nesbit, all of whom are absent, but are not so absent by the procurement of the defendants or their counsel, and they live in said county and State. Defendants say that they expect to prove by Dr. J. H. Bain, Thomas Douglass, and J. A. Nesbit, the signature of F. M. Mundine, father of plaintiff, to a letter written to Mary C. Cunningham, then Mary C. Mundine, a defendant herein. That said testimony is material to the defense in this respect, plaintiff having acted by and through his father, said F. W. Mundine, in making and agreeing to the oral partition set up in plaintiff's petition; said letter of date June 28, 1878, plaintiff being still a minor and having his interests in matter in controversy conducted by his father, was written prior to the death of J. C. Mundine, and by it plaintiff virtually admits and acknowledges the cotenancy of plaintiff and defendants in the land herein controverted, and this, too, at a date many years subsequent to the alleged partition. Defendants say, that they expect to prove by I. Douglass, George Guthrie, and John Mundine the date of the death of J. C. Mundine, father of defendants, grandfather of plaintiff, and the original owner of the 1452 acres tract mentioned in plaintiff's petition, and also the dates of the prospecting, laying out, and platting the town of Lexington upon the 250 acres claimed by plaintiff, as well as the relative values of the different portions of the said original 1452 acres tract; and defendants say that this testimony is material for the following reasons, to wit: The allegation of an oral partition in 1872, being the main issue, sharply drawn, being asserted positively by plaintiff and absolutely denied by defendants, it will strengthen the defense to show by said witnesses, as defendants expect to show by them, that said J. C. Mundine lived several years after the date of the alleged partition, and for many years before and up to his death lived with defendants; that at the date of said alleged partition the 250 acres selected and now claimed by plaintiff was not more valuable than the remaining portion of said large tract per acre, but that shortly prior to the filing of this suit said 250 acres increased in value fourfold; that the prospecting of the town of Lexington and the laying out thereof on the 250 acres now claimed by the alleged partition are about coincident in date with the filing of this suit. And the defendants

expect further to show, by said witnesses, certain conduct and actions of plaintiff which contradict the allegations of an oral or any other kind of partition."

In reference to the letter said to have been written by F. M. Mundine, the father of plaintiff, in 1878, we do not understand that it could have been used to defeat the parol partition made in 1872. His declarations, acknowledging that plaintiff held the land as a cotenant with defendants, would not have been admissible—at least unless it had been shown that he was in possession of the land. The facts show that plaintiff was in possession, claiming the 250 acres as his own. We think, too, that the letter itself should have been shown to the court, and that it was not sufficient to state that by it "plaintiff virtually admits and acknowledges the cotenancy," etc. The letter was not shown to be material.

The proposed testimony as to the relative value of the 250 acres and the remaining part of the 1452 acres was not material. Plaintiff was not suing for a partition, but for particular land owned by him by virtue of a partition made many years before. The subsequent enhancement of the value of the land would also, in our opinion, be immaterial. If the partition was shown, the value of the land claimed by plaintiff at any time would be of no consequence. If the proof failed to show the partition, he could not recover the specific survey at all.

The allegation that defendants expected to prove by the absent witnesses "certain conduct and actions of plaintiff which contradict the allegations of an oral or any other kind of partition," was too indefinite to be considered by the court. The "certain" acts relied on should have been stated, so as to enable the court to judge of their effect. We do not think the evidence proposed is shown to be material.

As to the necessity of tendering witness fees in order to procure a continuance on account of the absence of the witnesses, we refer to the case of Railway v. Hall, 83 Texas, 678, 679, as declaring the law under the circumstances of that case.

We do not find that there was error in overruling the application for a continuance.

Plaintiff proved that there was a parol partition of the land as alleged by him, that he went into possession of the part allotted to him, fenced it, cultivated a part of it, paying taxes thereon, claiming it as his own, and has been in such possession ever since the partition, and therefore he has shown full title thereto.

The judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Delivered April 18, 1894.